1  Jason L. Sanders
   (Arizona Bar No. 022679)
2  LOCKE LORD LLP
   2200 Ross Avenue, Suite 2200
3  Dallas, Texas 75201
   Telephone: (214) 740-8000
4  Facsimile: (214) 740-8800
   E-Mail: jsanders@lockelord.com
5
   Bart W. Huffman
6  (*pro hac vice* application forthcoming)
   LOCKE LORD LLP
7  100 Congress Ave., Suite 300
   Austin, Texas 78701
8  Telephone: (512) 305-4746
   Facsimile: (512) 391-4741
9  E-Mail: bhuffman@lockelord.com

10 Attorneys for SBC Internet Services, Inc. d/b/a AT&T Internet Services;
   BellSouth.net; CenturyTel; Cox Communications, Inc.; Cellco Partnership
11 d/b/a Verizon Wireless; Embarq Corporation; Qwest Communications;
   and Verizon Online LLC
12
   (additional counsel listed on signature page)
13

14                    **IN THE UNITED STATES DISTRICT COURT**

15                          **FOR THE DISTRICT OF ARIZONA**

16

17 | CP PRODUCTIONS, INC., an Arizona corporation, | **CASE NO.: 2:12-CV-1183-PHX-SLG** |
18 | Plaintiff, | |
   | | **INTERNET SERVICE PROVIDERS'** |
19 | v. | **MOTION FOR RECONSIDERATION** |
20 | | **OF AUGUST 24, 2012 ORDER (ECF** |
   | | **No. 13) GRANTING PLAINTIFF'S *EX*** |
21 | JOHN DOE, | ***PARTE* MOTION FOR PROTECTIVE** |
   | Defendant. | **ORDER** |
22

23         Internet service providers SBC Internet Services, Inc. d/b/a AT&T Internet

24 Services; BellSouth.net; CenturyTel; Comcast Cable Communications, LLC; Cox

25 Communications, Inc.; Cellco Partnership d/b/a Verizon Wireless; Embarq Corporation;

26 Qwest Communications; Cequel Communications, LLC d/b/a Suddenlink

27

28

Communications; and Verizon Online LLC (collectively, the "Internet Service Providers" or the "ISPs") move for reconsideration of the Court's August 24, 2012 Order Granting Plaintiff's *Ex Parte* Motion for Protective Order (the "Order," ECF No. 13) pursuant to LR Civ. 7.2(g).  The Order was issued based on authorities presented by the Plaintiff, CP Productions, Inc. ("CP") that concern court-ordered preservation by *parties* to litigation.  Here, the ISPs are not parties to the lawsuit, and the preservation order essentially amounts to a mandatory injunction against *potential* third-party "witnesses" that, among other things, is not contemplated within the framework of protections and requirements set forth in Rule 45 of the Federal Rules of Civil Procedure governing discovery of third-party witnesses.  Furthermore, CP's bare assertion that it seeks to identify hundreds of Internet subscribers because those identifications are relevant to CP's claims against a single John Doe has been found meritless by other courts.  CP's intention here is not to proceed in this court with litigation against potential future defendants, but rather to coerce multiple settlements with persons who are never likely to (and in all likelihood could not) be made defendants in this case.  The true and sole purpose of the "discovery" sought – to identify settlement targets to whom threatening demand letters and/or phone calls can be directed – is well known by the ISPs and the federal courts, and explained in numerous opinions from district courts throughout the country.  Absent any legitimate basis for the proposed discovery, the imposition of additional burdens on the ISPs in the form of a preservation order is unwarranted, even if such relief were otherwise available.

## I. BACKGROUND

### The National Wave of BitTorrent Copyright Infringement Cases

This lawsuit is of a piece with scores of similar copyright infringement cases brought across the country by attorneys representing owners of pornographic content. The cases follow what district judges have called a "common arc":

> (1) a plaintiff sues anywhere from a few to thousands of Doe defendants for copyright infringement in one action; (2) the plaintiff seeks leave to take early discovery; (3) once the plaintiff obtains the identities of the IP subscribers through early discovery, it serves the subscribers with a settlement demand; (4) the subscribers, often embarrassed about the prospect of being named in a suit involving pornographic movies, settle…. Thus, these mass copyright infringement cases have emerged as a strong tool for leveraging settlements – a tool whose efficiency is largely derived from the plaintiffs' success in avoiding the filing fees for multiple suits and gaining early access en masse to the identities of alleged infringers.

*MCGIP, LLC v. Does 1-149*, 2011 U.S. Dist. LEXIS 108109, at *11 n.5 (N.D. Cal. Sept. 16, 2011); *see also In re BitTorrent Adult Film Copyright Infringement Litig.*, 2012 WL 1570765 at *10 (E.D.N.Y. May 1, 2012) (noting that unfair litigation tactics similar to those described above "may be the principal purpose of these actions, and . . . distinguish these plaintiffs from other copyright holders.").

This particular case is another example of current plaintiff's counsel's relentless "mass discovery" efforts. In the current formulation, the plaintiff sues just one defendant, then says there are numerous potential "joint tortfeasors" or so-called "co-conspirators" as to which identification discovery should be permitted even though they are not parties. *E.g.*, *CP Prod. v. Doe*, 2012 WL 3205621 (E.D. Cal. Jul. 31, 2012) (reconsidering and vacating prior order authorizing discovery of the ISPs to identify alleged "co-conspirators," on grounds including that joinder of the "co-conspirators" likely would be improper).[1] Thus, discovery is sought as to hundreds or thousands of individuals – identified solely by IP address – under the theory that they are simultaneously (i) potential parties as to whom identification is warranted but also (ii) non-parties as to whom personal jurisdiction, venue, and joinder are not pertinent. Plaintiff will say that the subscribers' rights, if any, should be addressed after they are

---

[1] Additional authorities cited at pages 12-15, *infra*.

3

served and enter an appearance, when the histories of plaintiff's counsel's many cases show that they have no desire to serve or name any of them as defendants, and, even if they did, it would come at or near the conclusion of the mass identification and coercion game that is actually in play.

In reality, what CP seeks is not "discovery" at all.  Similar to the plaintiffs in hundreds of comparable cases, CP is actually pursuing a shopping list of names and contact information that it can use to coerce settlement.[2]  Although CP has told the Court that the identities of hundreds of Internet subscribers (who may or may not be the individuals using a given Internet account at any point in time) would be relevant to its claims against the single John Doe, CP does not articulate any basis for such a contention as to *even one* of the hundreds of so-called "joint tortfeasors," let alone all of them.

Federal courts across the county have recognized the potential for abusive settlement tactics and have, in rapidly increasing numbers, quashed subpoenas, severed multiple defendants, imposed sanctions, and generally increased their supervision and skepticism over these lawsuits and massive discovery requests.  For example, Chief Judge Holderman of the Northern District of Illinois recently observed, in a case factually identical to this one involving CP's national counsel, that plaintiffs who are enlisting the courts for the purpose of harvesting contact information are encountering a "stiffening judicial headwind" in federal courts across the country.  *Pac. Century Int'l, Ltd. v. John Does 1-37*, 282 F.R.D. 189, 194 (N.D. Ill. 2012) (finding that because plaintiff had not, and could not plausibly, plead the existence of an agreement among

---

[2] See, e.g., *K-Beech, Inc. v. Does*, 2011 U.S. Dist. LEXIS 124581, at *7 (E.D. Va. Oct. 5, 2011) (explaining the court's concern that "plaintiffs have used the offices of the Court as an inexpensive means to gain the Doe defendants' personal information and coerce payment from them").  Additional authorities cited at pages 2-3, *supra* and pages 5-6, 9, 15, *infra*.

4

these unidentified users of IP addresses, "allegations of civil conspiracy are only unjustified attempts to bolster the obtaining of irrelevant discovery about non-parties."). Another judge stated:

> [T]he court shares the concern that these cases potentially open the door to abusive settlement tactics. . . .  Nothing currently prevents Plaintiff from sending a settlement demand to the individual that the ISP identifies as the IP subscriber.  That individual—whether guilty of copyright infringement or not—would then have to decide whether to pay money to retain legal assistance to fight the claim that he or she illegally downloaded sexually explicit materials, or pay the money demanded. This creates great potential for a coercive and unjust "settlement."

*Hard Drive Prods. v. Does*, 2011 U.S. Dist. LEXIS 132449, at *9 (N.D. Cal. Nov. 16, 2011).[3]

---

[3] *See also, e.g., Cinetel Films, Inc. v. Does 1-1,052*, 2012 WL 1142272 (D. Md. Apr. 4, 2012) (dismissing all Does for improper joinder but one); *AF Holdings LLC v. Does 1-135*, 2012 WL 1038671 (N.D. Cal. Mar. 27, 2012) (dismissing lawsuit for failing to serve any defendants); *Patrick Collins, Inc. v. John Does 1-23*, 2012 WL 1019034 (E.D. Mich. Mar. 26, 2012) (dismissing from action Does 2-23 for improper joinder); *K-Beech, Inc. v. John Does 1-41*, 2012 WL 773683 (S.D. Tex. Mar. 8, 2012) (dismissing all Does but one because plaintiff's copyright concerns "do[] not justify perverting the joinder rules"); *SBO Pictures, Inc. v. Does 1-87*, 2012 WL 177865 (D.D.C. Jan. 19, 2012) (ordering plaintiff to show Does' IP addresses are within Court's jurisdiction before granting any discovery); *Raw Films, Inc. v. Does 1-32*, 2011 WL 6840590 (N.D. Ga. Dec. 29, 2011) (dismissing claims against 29 of 32 Does for improper joinder, and noting that earlier grant of plaintiff's motion for discovery was done "before appreciating the manageability problems posed by joinder of unrelated defendants"); *Berlin Media Art v. Does 1-654*, 2011 WL 36383080 (N.D. Cal. Oct. 18, 2011) (denying motion for *ex parte* discovery for failure to show personal jurisdiction over each Doe or proper venue); *Hard Drive Productions, Inc. v. Does 1-30*, 2011 WL 4915551 (E.D. Va. Oct. 17, 2011) (after initially granting plaintiff's request to take discovery, finding "upon due consideration" that Does 2-30 are improperly joined); *DigiProtect USA Corp. v. Does 1-240*, 2011 WL 4444666 (S.D.N.Y. Sept. 26, 2011) (vacating subpoena and dismissing complaint, with leave to replead only as to Does over whom there is prima facie personal jurisdiction); *On the Cheap, LLC v. Does 1-5011*, 2011 WL 4018258 (N.D. Cal. Sept. 6, 2011) (dismissing Does 1-16 and 18-5,011, after originally granting plaintiff's *ex parte* order, based on multiple concerns arising

Footnote continues on next page.

**Procedural History of This Case**

Plaintiff CP Productions, Inc. filed a complaint against a single John Doe defendant alleging that this single Doe used the BitTorrent protocol to violate CP's copyright in one of its pornographic movies. (Compl. ¶¶ 1-3, ECF No. 1.) The Complaint asserts three causes of action: (1) copyright infringement, (2) civil conspiracy with the so-called "joint tortfeasors" – the hundreds of other subscribers whose identities CP wants so badly to obtain; and (3) contributory infringement. (Compl. ¶¶ 1-3, 26-46.)

CP initially sought leave, *ex parte*, to issue expedited discovery to a host of Internet service providers (ISPs) to determine the identities of some 700 subscribers listed in Exhibit A to the Complaint under the theory that they were putative "co-conspirators" of the single Doe defendant. (Pl.'s *Ex Parte* Mot. for Leave to Take Disc. Prior To Rule 26(f) Conference at ¶¶ 1-3, ECF No. 5.) Never mind that the actual downloaders will include visitors, family members, neighbors or strangers to the Internet subscribers to be identified, and never mind that the single Doe defendant could not have "conspired" with any of them because that Doe wouldn't have any more of an idea who they all are than CP does.[4]

The Court denied CP's request for mass discovery on an expedited basis, and instead granted CP leave to issue a subpoena only to the Internet service provider of the IP address said to correspond to the single Doe defendant, and only for the purpose of

---

during the case); *AF Holdings LLC v. Does 1-97*, 2011 WL 2912909 (N.D. Cal. July 20, 2011) (denying discovery of Does 2-97 due to improper joinder).

[4] *See, e.g.*, *Hard Drive Prods. v. Does 1-130*, 2011 U.S. Dist. LEXIS 132449, at *6-7 (the targeted Internet subscribers necessarily will include "[innocent] ISP 'Subscriber[s]' over whose internet connection the Work allegedly was downloaded."); *Digital Sin, Inc. v. Does 1-5698*, 2011 U.S. Dist. LEXIS 128033, at *10 (N.D. Cal. Nov. 4, 2011) ("as has been discussed by other courts in this district, the ISP subscribers may not be the individuals who infringed upon Digital Sin's copyright").

6

1  seeking that person's identity.  (Order Granting in Part Pl.'s *Ex Parte* Mot. to Take Disc.,
2  ECF No. 9.)  The Court declined to revisit that order despite CP's request to alter or
3  amend it; and the Court also denied CP's initial request for a preservation order  (Pl.'s
4  Mot. to Alter or Am. Court's Order of Jul. 25, 2012 Pursuant to Rule 59(e), ECF No.
5  10), but the Court invited CP to provide authority and arguments on which such an
6  order might be issued. (Order Re Pl.'s Mot. to Alter or Amend at 2, ECF No. 11.)  In
7  response, CP filed a motion citing authority pertaining to preservation orders issued to
8  *parties*, without making that distinction clear to the Court (Pl.'s *Ex Parte* Mot. for
9  Preservation Order at 3, ECF No. 12), and the Court granted the motion and issued the
10 Order. CP never provided any notice to the ISPs that it was seeking relief against them
11 in this proceeding until after the Order was issued, and even then CP's counsel did not
12 provide notice to the ISPs' counsel but instead proceeded to serve it on the ISPs as
13 though it were just another document in CP counsel's steady stream of Rule 45
14 subpoenas.[5]

## II. ARGUMENT

16    Upon reconsideration, the Court should vacate the Order.  While the Court has
17 been properly leery of allowing CP the invasive discovery it really wants as to the
18 personally identifiable information of all 700 subscriber targets on its list, even
19 preservation as required by the Order constitutes unwarranted and unduly burdensome
20 relief that is not authorized by the Rules or applicable law.
21    The Order is effectively a mandatory injunction compelling the ISPs to suspend
22 ordinary course of business practices, at their sole cost and expense, even though none
23 of the injunction elements were established or limitations observed, and even though the
24 enjoined entities are not parties to this proceeding and were never notified, served, or

---

[5] The Order directs the ISPs identified in Exhibit A to the Complaint to preserve the personally identifying information that CP seeks as to all supposed "joint tortfeasor" subscribers until the completion of the Rule 26(f) conference in this lawsuit.

7

given an opportunity to respond to the requests for relief against them.  In addition, CP has not and cannot establish that the information sought to be preserved is legally relevant to CP's claims against the single John Doe defendant.

### A. The preservation order is tantamount to a mandatory injunction against third parties, and CP has established none of the injunction factors.

The Order should be vacated for the simple reason that it is effectively a preliminary mandatory injunction – against the ISPs who are at most third-party witnesses and not actual parties.  CP did not even argue, much less establish, that the preliminary-injunction factors are satisfied (Pl.'s *Ex Parte* Mot. for Preservation Order at 3),[6] and such an order would only be permitted against an adverse party in the case with notice.[7]  FED. R. CIV. P. 65(a).

In this Circuit, a party seeking a preliminary injunction must establish:  a likelihood of success on the merits, a likelihood that the party will suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in the favor of the party seeking the injunction, and that the sought-after injunction is in the public interest. *Cervantes v. Countrywide Home Loans, Inc.*, 09-cv-517, 2009 WL 1636169 at *1-2 (D. Ariz. Jun. 10, 2009) (citing *Am. Trucking Assoc., Inc. v. City of Los Angeles*, 559 F.3d 1046 (9th Cir. 2009) and ultimately denying injunctive relief where the moving party had failed to demonstrate irreparable harm).  At most, CP's motion argued only irreparable harm. (Pl.'s *Ex Parte* Mot. for Preservation Order at 3-5.)  However, if

---

[6] Nor did CP purport to meet the even higher requirements associated with obtaining a temporary restraining order. *See* FED. R. CIV. P. 65(b) (temporary restraining order may issue only where specific facts in an affidavit or verified complaint "show that immediate and irreparable injury, loss, or damages will result to the movant before the adverse party can be heard in opposition" and "the movant's attorney certifies in writing any efforts made to give notice and reasons why it should not be required").

[7] CP's national counsel is well aware, from a multitude of other copyright litigations, of the identities of these ISPs' counsel, but did not bother to serve counsel with the motion or notify counsel and did not attest to having done so.

8

1  none of the other factors are demonstrated, even a plaintiff who has established
2  irreparable harm is not entitled to a preliminary injunction.  *See Winter v. Natural*
3  *Resources Defense Council*, 555 U.S. 7, 24 (2008) ("even if plaintiffs have shown
4  irreparable injury from the [defendant's actions], any such injury is outweighed by the
5  public interest . . . ").  And CP's motion does not even address any of the other factors.

6        That said, CP's invocation of irreparable harm misses the mark.  The Complaint
7  alleges that CP has used "geolocation technology to trace the IP address of John Doe to
8  a point of origin within the State of Arizona" and explains that "[g]eolocation is a
9  method for ascertaining the likely geographic region associated with a given IP address
10 at a given date and time."  (Compl. ¶ 7.)  If that is the case, CP can use "geolocation"
11 technology to determine the proper court in which each of the purported "joint
12 tortfeasors" might be sued and seek discovery under Rule 45 of the Federal Rules of
13 Civil Procedure in such proceedings.  That CP's business model may lead it to pursue
14 mass identification under a thin cover of pretextual "joint tortfeasor" or "co-conspiracy"
15 allegations does not support a legitimate claim of irreparable harm.  Any harm here
16 arises from CP's inappropriate litigation tactics, which is CP's choice and CP's own
17 doing.  *See, e.g,. Malibu Media, LLC v. John Does 1-10*, 2012 U.S. Dist. LEXIS 89286
18 at *5-9 (C.D. Cal. Jun. 27, 2012) (stating that "[t]he federal courts are not cogs in
19 plaintiff's copyright-enforcement business model.  The Court will not idly watch what is
20 essentially an extortion scheme, for a case that plaintiff has no intention of bringing to
21 trial. . . . If [plaintiff] desires to vindicate its copyright rights, it must do it the old-
22 fashioned way and earn it.").

23       Not only has CP failed to demonstrate the elements of a preliminary injunction,[8]
24 such relief is not permitted against third-parties like the ISPs.  Under the Federal Rules
25
26 ---
[8] CP was also not required to provide any security to pay the ISPs' costs and damages in
27 the event the injunction was wrongfully issued.  FED. R. CIV. P. 65(c).
28

9

1  of Civil Procedure, a preliminary injunction may only bind:  the parties; the parties'
2  officers, agents, servants, employees, and attorneys; and other persons who are in active
3  concert or participation with any of the parties, or the parties' officers, agents, servants,
4  employees, and attorneys.  *See* FED. R. CIV. P. 65(d)(2).  Here, none of the ISPs are in
5  "active concert or participation" with the single John Doe defendant (or, for that matter,
6  any of the so-called "joint tortfeasors").  (*See* Compl., Ex. A., ECF No. 1-1.)  The
7  injunctive relief contained in the Order is not permitted by the applicable Rules.

8   **B.   The authorities provided by CP in support of its request for a preservation order do not provide authority for the issuance of such an order against third-parties.**

10  Further, the cases cited in Plaintiff's *Ex Parte* Motion for Preservation Order do
11 not support the issuance of preservation orders against third-parties.  Those authorities
12 indicate that, in appropriate circumstances, a *party* to an action may be required to
13 preserve information during the pendency of the litigation.  *Columbia Pictures Indus. v.*
14 *Bunnel*, 06-cv-1093, 2007 WL 2080419 at *5-6 (C.D. Cal. May 29, 2007) (requiring
15 party to preserve IP address logs that were within the party's possession, custody, or
16 control); *Treppel v. Biovail Corp.*, 233 F.R.D. 363 (S.D.N.Y. 2006) (declining to require
17 party to preserve information because plaintiff had failed to make a required showing,
18 taking note of the costs of preservation "especially with respect to electronic data," and
19 questioning which party should bear the expense of any such preservation that might
20 later be ordered); *Del Campo v. Kennedy*, No. 01-cv-21151, 2006 WL 2586633 (N.D.
21 Cal. Sep. 8, 2006) (entering interim order requiring preservation of materials by
22 parties); *The Pueblo of Laguna v. U.S.*, 60 Fed. Cl. 133 (Fed. Cl. 2004) (requiring the
23 United States, as a party, and several of its agencies, to preserve potentially relevant
24 information); and *Linnen v. A.H. Robins Co., Inc.*, 10 Mass. L. Rep. 189, 1999 Mass.

Super. LEXIS 240 (Mass. Superior Ct. 1999) (requiring party to preserve potentially relevant e-mails).[9]

CP has provided no authority, and the ISPs are not aware of any authority, for the issuance of a preservation order directed to third-parties such as the ISPs in this case.[10] Thus, it appears that such an order could only be an injunction, which is not permissible here (or as to non-parties as a general matter).

### C. The Order requires the preservation of materials that are not relevant to CP's claims.

In addition, CP has not demonstrated that the information to be preserved is relevant to any of its claims against the single defendant in this lawsuit. An order to preserve specified information necessarily presumes and requires that the information would ultimately be discoverable; otherwise, there is no reason to preserve it. Accordingly, CP at least had to demonstrate that it would ultimately be entitled to discover – in this lawsuit – the identifying information it seeks. CP has made no such showing. Thus, CP has not provided the most fundamental basis for the issuance of a preservation order (even if otherwise permissible) and the consequent burden that such order would impose on the ISPs.

#### 1. CP has not established and cannot establish relevance.

Discovery is appropriate as to "nonprivileged matter that is relevant to any party's claim or defense." FED. R. CIV. P. 26(b)(1). CP contends or at least intimates

---

[9] Another of the authorities cited by CP discusses a court's power to impose remedies and take appropriate action in connection with spoliation of evidence by a party, but does not address preservation orders or their propriety. *Glover v. Bic Corp.*, 6 F.3d 1318, 1322, 1329-30 (9th Cir. 1993).

[10] If it were, almost any prospective litigant might file an action against unnamed defendants solely for the purpose of compelling third parties to preserve at their expense all information potentially relevant (or, as here, not even shown to be relevant) to possible future actions.

11

1   that once it obtains the identities of the 700 or so subscribers whose IP address appear in
2   Exhibit A to the Complaint, it might name and join some of them in this lawsuit as
3   "joint tortfeasors" or "co-conspirators."  CP's position is that the identities of these non-
4   parties associated with the IP addresses will be relevant to claims against future
5   defendants who have not yet been sued.  CP (like other plaintiffs in similar cases) seeks
6   to avoid personal jurisdiction and joinder hurdles while obtaining the identifying
7   information connected with hundreds of IP addresses located across the country in this
8   single lawsuit.  Again, the reason for this is that CP is actually not interested in litigation
9   – all CP wants is a long list of names and contact information.
10       In nearly identical circumstances, Chief Judge Holderman of the Northern
11  District of Illinois denied a motion to compel ISPs to comply with subpoenas for
12  production of subscriber identifying information.  *Pac. Century Int'l*, 282 F.R.D. at 196
13  (criticizing tactic of seeking so-called co-conspirators' identities because "[b]y that
14  device, the plaintiffs can avoid all personal jurisdiction and joinder hurdles, and yet
15  obtain the identifying information connected with hundreds of IP addresses located all
16  over the country through a single lawsuit.").  In that case, as here, the plaintiffs were
17  producers of pornography that sued a single John Doe defendant alleging copyright
18  violations and civil conspiracy based on the use of BitTorrent technology to download
19  the plaintiffs' intellectual property.  *Id.* at 192, 194-95.  The plaintiffs maintained that
20  they wanted the names to learn the identities of other co-conspirators so they could
21  name them in the suit.  *Id.* at 195.  The court held, however, that the information sought
22  concerning non-parties was not relevant to any claims at issue in the suit, and thus not
23  discoverable.  *Id.* at 194-96.
24       In that case, the *Pacific Century* court noted that, for relevance to be established,
25  the purported discovery must have some bearing on the conspiracy and copyright claims
26  against the current Doe defendant.  *Id.* at 195. But considering the nature of the
27  BitTorrent system, subpoenas seeking the identity of users of non-party IP addresses
28

1 were not reasonably calculated to lead to discovery of evidence relating to the pending
2 claims. *Pac. Century Int'l*, 282 F.R.D. at 195. That is because "BitTorrent users remain
3 anonymous to other BitTorrent users, and have no connection to them beyond the mere
4 fact that they downloaded the same file." *Id*. The court also noted that "a BitTorrent
5 user will have no information about other users other than their IP addresses, the same
6 information the plaintiffs already possess." *Id.* at 195 n.13. "It is therefore," the court
7 continued, "not a reasonable calculation that the individuals connected to the
8 subpoenaed IP addresses will have any discoverable information related to the current
9 defendants." *Id.* at 195.

10 The court also noted that the civil-conspiracy claims appeared unfounded
11 because the plaintiffs did not plead the existence of an agreement among the alleged
12 conspirators. *Id*. And, based on what was pleaded, it did not appear plausible that the
13 plaintiffs *could* plead the existence of a conspiracy given the requirement of pleading an
14 agreement. *Id*. Thus the court found that the allegations of civil conspiracy were "only
15 unjustified attempts to bolster the obtaining of irrelevant discovery about non-parties,"
16 with the real motive being to obtain the subscribers' names so that the plaintiffs could
17 coerce settlements from them:

> It is thus plain that the plaintiffs are not seeking information about the non-party IP addresses for the purpose of litigating their current claims. Instead, the plaintiffs intend to either sue the individuals whose identity they uncover or, more likely, to negotiate a settlement with those individuals….[And,] "when the purpose of a discovery request is to gather information for use in proceedings other than the pending suit, discovery is properly denied."

23 *Pac. Century Int'l*, 282 F.R.D. at 195-96 (quoting *Oppenheimer Fund, Inc. v. Sanders*,
24 437 U.S. 340, 353, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978)); *see also Millennium TGA,*
25 *Inc. v. Comcast Cable Commc'ns, LLC,* --- F.Supp.2d ---, 12-mc-00150, 2012 WL
26 2371426 (D.D.C. Jun. 25, 2012) ("[i]f the civil conspiracy claim is invalid, there is no
27 good cause for discovery related to the alleged co-conspirators.").

13

These passages could have been written about this case. The information CP seeks to preserve is not likely to lead to the discovery of admissible evidence. The very nature of BitTorrent technology and its anonymity precludes plaintiff from alleging an agreement between BitTorrent users, and yet an agreement is the *sine qua non* of a conspiracy. Thus, consistent with Rule 11, plaintiff could never allege a conspiracy claim involving the putative subscribers on its list.

Nor are the identities of 700 subscribers (who may or may not have been the users of the Internet accounts that allegedly committed infringement) necessary for CP to be able to prove damages in its claims against the single Doe defendant, as CP has argued but never explained. (*See* Mot. for Expedited Disc. at 4-5.) From Exhibit A to the Complaint, we learn that CP purports to have the ability to determine how many times its movie was downloaded or viewed during the period a given swarm allegedly was observed. CP will not be in a better position to establish damages if it is provided with personally identifiable information so that it can contact numerous other subscribers, unknown to CP or the single Doe defendant, who allegedly happened to upload or download content at some point in time in the same swarm.

It is not enough simply to say that CP needs the names and contact information of 700 non-party subscribers so it can prove damages in its single-defendant suit. In order to justify the issuance of an order permitting such discovery, CP must, but cannot, explain *why* those identities are necessary in this context, and how they bear on proof of damage.[11]

As noted above, the federal courts are all too familiar with the aggressive tactics of plaintiffs represented by CP's national counsel in seeking to uncover personally identifiable subscriber information *en masse*. Where the tactics involve pretextual "co-

---

[11] Protection of the subscribers from coercive "settlement" tactics post-identification is yet another matter.

14

conspirator" pleadings, it appears, based on the case law the ISPs located, that every federal court which has scrutinized mass discovery requests (outside the context of an *ex parte* submission by the plaintiff) has refused to play along.  *E.g CP Prod. v. Doe*, 2012 WL 3205621 (E.D. Cal. Jul. 31, 2012) (vacating portion of order allowing for expedited discovery as to co-conspirators, even while "acknowledging risk" that information might be lost); *Millennium TGA, Inc. v. Comcast Cable Commc'ns, LLC,* 2012 WL 2371426 at *7  ("Given the intimidating tactics and oppressive demands made by Plaintiff's counsel in other cases, it is particularly appropriate to require the Plaintiff to proceed according to the federal rules and only allow discovery related to valid claims that can and actually will be prosecuted in the federal court where the claims have been filed."); *First Time Videos, LLC v. Doe*, 2012 WL 1355725 (E.D. Cal. Apr. 18, 2012) ("[A]s numerous other courts have noted, if the undersigned were to grant plaintiff's renewed request for expedited discovery regarding the alleged co-conspirators, plaintiff would likely send settlement demands to the individuals whom the ISP identified as the IP subscriber. That individual – whether guilty of copyright infringement or not – would then have to decide whether to pay money to retain legal assistance to fight the claim that he or she illegally downloaded sexually explicit materials, or pay the money demanded. This creates great potential for a coercive and unjust 'settlement.'") (internal citations and quotations omitted).

### 2. The preservation order is unduly burdensome.

CP asserts that the burden on the ISPs to preserve the information plaintiff seeks is "minimal" and that preserved information may be stored by the ISPs at "little or no cost."  (Mot. for Protective Order at 4-5.)  This is a wholly unsupported statement and is flatly untrue.  Preserving information concerning hundreds of Internet subscribers obviously involves careful research and preservation efforts.  And even that burden would be minor when compared to the aggregate burdens that would be imposed under the numerous preservation orders that CP's national counsel would likely obtain if

permitted to do so. When balanced against the irrelevance of the information sought to this proceeding, the burden the preservation order imposes on the ISPs is unwarranted and undue. *Cf. Compaq Computer Corp. v. Packard Electronics, Inc.,* 163 F.R.D. 329, 335-36 (N.D. Cal. 1995) (noting that, "if [sought-after discovery is] not relevant nor calculated to lead to the discovery of admissible evidence, then *any burden whatsoever* imposed upon [a third party] would be by definition 'undue'") (emphasis in original).

Moreover, as recognized by CP, the burden imposed on the ISPs is accretive. (Mot. to Alter or Am. Court's Order of Jul. 25, 2012 Pursuant to Rule 59(e) at 3 ("This [preservation] route suffers from the extra burden it imposes on nonparty ISPs, which would be required to both preserve the data and then fulfill subpoena requests instead of simply fulfilling subpoena requests.").) Such incremental burden is even more objectionable where, as here, (i) the ISPs would be required to incur costs for which they are not being reimbursed, costs almost identical to those they would incur if subject to a valid subpoena; (ii) the ISPs are, at most, third-party witnesses, yet none of the protections built into Rule 45 have been applied; and (iii) the discovery sought is not sought for a proper purpose and/or has not been demonstrated as likely to lead to the discovery of admissible evidence in connection with the existing claims against the single Doe defendant.

* * * * *

For the foregoing reasons, the ISPs respectfully request that the Court reconsider its August 24, 2012 Order and enter an order releasing the ISPs from any obligation to preserve information in connection with this action.

1  Dated this 14th day of September, 2012.

2

3                                              /s/ Jason L. Sanders
                                 Jason L. Sanders, Arizona Bar No. 022679
4                                              LOCKE LORD LLP
                                               2200 Ross Ave., Suite 2200
5                                              Dallas, Texas  75201-6776
                                               Telephone:  (214) 740-8000
6                                              Facsimile:  (214) 740-8800
7                                              E-mail:  jsanders@lockelord.com

8
                                               Attorneys for SBC Internet Services, Inc. d/b/a
9                                              AT&T Internet Services; BellSouth.net;
10                                             CenturyTel; Cox Communications, Inc.;
                                               Cellco Partnership dba Verizon Wireless;
11                                             Embarq Corporation; Qwest
                                               Communications; and Verizon Online LLC
12

13                                             /s/ Gregory S. Fisher
                                               Gregory S. Fisher, Arizona Bar No. 021480
14                                             DAVIS WRIGHT TREMAINE LLP
                                               701 West Eighth Avenue, Ste. 800
15                                             Anchorage, Alaska 99501
16                                             Tel: (907) 257-5335
                                               Fax: (907) 257-5339
17                                             E-Mail: gregoryfisher@dwt.com

18
                                               Attorneys for Comcast Cable
19                                             Communications, LLC and Cequel
                                               Communications, LLC d/b/a Suddenlink
20                                             Communications

21

22

23

24

25

26

27

28

17

**NOTICE OF ELECTRONIC FILING**

I hereby certify that on this 14th day of September, 2012, I electronically filed the foregoing with the Clerk of the Court for filing and uploading to the CM-ECF system which will send notifications of such filing to all parties of record.

A COPY of the attached proposed order was electronically mailed to:

Honorable Sharon L. Gleason (gleasonproposedorders@akd.uscourts.gov)

U.S. District Court
Federal Building & U.S. Courthouse
222 West 7th Ave., Box 50
Anchorage, AK 99513-9513

/s/     Jason Sanders